J-A28018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.J.P., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: A.I.P., MOTHER | |
| | No. 1089 EDA 2016 |

Appeal from the Order Entered March 3, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000145-2016, CP-51-DP-0001876-2014,
FID: 51-FN-001801-2014

BEFORE:  PANELLA, SHOGAN, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 16, 2016**

Appellant, A.I.P. ("Mother"), appeals from the decree entered on March 3, 2016, granting the petition filed by the Philadelphia County Department of Human Services ("DHS" or "the Agency"), which involuntarily terminated Mother's parental rights to her son, A.J.P. ("Child"), born in May of 2006, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  In addition, Mother appeals from the order entered on March 3, 2016, which

---

[*]  Retired Senior Judge assigned to the Superior Court.

changed Child's permanency goal to adoption pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S. § 6301-6365.[1, 2] We affirm.

The underlying procedural history of this case is as follows. On August 6, 2014, when Child was eight years old, Philadelphia Police took him to DHS due to allegations of physical abuse by Mother. On August 20, 2014, Child was adjudicated dependent and committed to DHS. Eventually, DHS filed petitions for involuntary termination of parental rights to Child on February 16, 2016. The trial court held an evidentiary hearing on March 3, 2016. At the hearing, DHS presented the testimony of Yoaany Santos, the Community Umbrella Agency ("CUA") Case Manager for Northeast Treatment Center ("NET") formerly assigned to Child's case. N.T., 3/3/16, at 10-32. DHS also presented the testimony of Deitra Price, the CUA Case Manager from NET currently assigned to Child's case. *Id.* at 32-43. Father testified on his own behalf. *Id*. at 44-46. In addition, Mother testified on her own behalf. *Id*. at 47-52.

_____

[1] We note that the appeal paragraph in this matter reflects that this appeal is from the "order" entered on March 3, 2016. However, our review of the certified record reflects that the trial court entered both a decree and an order on March 3, 2016. In addition, Mother filed notices of appeal from both the decree and the order.

[2] On that same date, the trial court terminated the parental rights of D.B., Child's natural father, and any unknown father. Father is serving a term of incarceration of twenty-two and one-half to forty-five years for a murder conviction. Trial Court Opinion, 6/8/16, at 7; N.T., 3/3/16, at 8, 24. Father has filed his own appeal at docket number 964 EDA 2016, which will be addressed separately.

The trial court summarized the testimony from the termination hearing as follows:

> Yoaany Santos, CUA Case Manager, testified she received the case in August 2014. (N.T. 3/03/2016, p. 10 at 4-11). She testified this matter came to the attention of DHS because of allegations that Mother was using physical punishment on the Child, and as a result, he fell down the stairs and sustained a bruise on his leg. He was removed from Mother's home and placed in the kinship home of the maternal aunt, I.P. (N.T. 3/03/2016, p.11 at 1-16).
>
> She further testified the Child told her his Mother used physical discipline with him before. The Child told her his Mother would hit him for any reason, sometimes for no reason, and that he was always punished when he did something bad or even for no reason. The Child then told her he did not feel safe in the home with his Mother. (N.T. 3/03/2016, p.12 at 23-25 & p.13 at 5-19).
>
> Ms. Santos testified she set up a single case plan meeting and set forth objectives for Mother. These objectives were for Mother to attend a drug and alcohol program because Mother had a history of drug use and abuse; attend mental health services; participate in parenting classes; and attend supervised visits at the Agency. (N.T. 3/03/2016, p.13 at 21-25 & p.14 at 1-12).
>
> Ms. Santos reiterated she had the case from August 2014 until January 2016. She stated Mother attended an intake appointment at the WEDGE on October 9, 2014, however, she was referred to NET for dual diagnosis and did not attend. (N.T. 3/03/2016, p.15 at 3-22). She further testified CEU records indicated Mother had three random drug tests that were all positive, January, 2015, April, 2015 and December 2015. (N.T. 3/03/2016, p.16 at 1-8).
>
> Regarding parenting class, Ms. Santos stated Mother never completed a parenting course. Mother was also not consistent with weekly visitation, and stated Mother completed not more than five (5) visits while she was Case Manager. Mother did give her contact information, however, she did not maintain regular contact. Mother was residing with Maternal Grandfather during

the entire time [Ms. Santos] was on the case. (N.T. 3/03/2016, p.18 at 12-25 & p.19 at 10-25 & p.20 at 13-23).

Regarding Mother, Ms. Santos observed the Child with Mother on two occasions. Mother would engage in conversations with the Child, however she opined, the parent-child bond is not strong and is minimal. (N.T. 3/03/2016, p.25 at 9-22). She stated the Child turns to his maternal aunt, LP., to have his needs met. The Child did not express that he wanted to return to Mother. She opined the Child would not suffer irreparable harm if Mother's parental rights were terminated and the Child was adopted as she believes that the Child is very mature and understands his Mother's situation and that she cannot care for him and that it is in his best interests to be adopted. (N.T. 3/03/2016, p.25 at 23-25 & p.26 at 1-25 & p.27 at 1-9).

On cross-examination, Ms. Santos stated Mother was an in-patient at Fairmount Hospital for eight (8) days and then [sent] to Gaudenzia for approximately eleven (11) days. She entered treatment on December 7, 2015 and left, voluntarily, on December 18, 2015. (N.T. 3/03/2016, p. 30 at 3-15).

Next to testify was De[i]tra Price, the current CUA Case Manager from NET. She visited with the Child on March 2, 2016, one day before the hearing. He is currently placed at a foster home through Delta. He was removed from the Maternal Aunt's home when [Ms. Price] went to Mother's home on February 18, 2016 for Mother to sign the voluntary relinquishment papers and found the Child there with both the Maternal Grandfather and Mother. She then proceeded to go to Maternal Aunt's home, who informed her that the Child did not stay at her home that night. Ms. Price felt no one was following the safety plan for the child so that is why the Child was removed. The Child also alleged inappropriate physical discipline by Maternal Aunt, and he refused to go back, saying if he is forced to go back to Maternal Aunt's house, he would run away. (N.T. 3/03/2016, p.33 at 1-25 & p.34 at 1-15 & p.35 at 4-14). She noted there are no current issues with the Child in his current foster home, and he is medically up to date. (N.T. 3/03/2016, p.40 at 5-9).

On cross-examination, Ms. Price stated she had written a letter to Father in prison the week before the hearing informing Father he had been assigned a new case worker and had not received a response. She further stated she has not explored

- 4 -

Father's family as a possible resource for the Child's placement. (N.T. 3/03/2016, p.41 at 5-22).

Father testified at the hearing, and stated the only correspondence he received from the Agency was February 16, 2016: a subpoena, and the petitions for adoption and to terminate his parental rights. (N.T. 3/03/2016, p.45 at 1-15). He further stated he loves his [c]hild very much, and believes the Mother is a good mother, but she made a few bad decisions and the Child did not get what he wanted so he exaggerated his Mother's actions toward him. (N.T. 3/03/2016, p. 46 at 6-15).

Mother also testified. She stated she attends the NET program three times per week, which she began at the end of December 2015. She also attends therapy at Nueva Vida, which started in February 2016. (N.T. 3/03/2016, p.48 at 10-16). Mother states she is bonded with her son and describes her relationship with her son as a loving one. She tells him all the time that she loves him and he says he loves her back. She believes her son will be irreparably harmed if her parental rights are terminated. (N.T. 3/03/2016, p.50 at 1-25 & p.51 at 1-25).

Trial Court Opinion, 6/8/16, at 9-12.

On March 3, 2016, the trial court entered the decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Also on that date, the trial court entered an order changing Child's permanency goal to adoption pursuant to 42 Pa.C.S. § 6351. This timely appeal by Mother followed. Both Mother and the trial court have complied with Pa.R.A.P. 1925.

Mother presents the following issues for our review:

1. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights under 23 Pa.C.S. § 2511(a)(5) and (8), and (b), and changing the goal to adoption, where the Department of Human Services of the City of Philadelphia (DHS) failed to prove by clear and convincing evidence that involuntarily terminating [Mother's]

parental rights would best serve the need and welfare of [Child], where there was inadequate evidence as to the parent-child bond and no pre-adoptive resource had been identified?

2. Did the trial court committed [sic] an error of law and abuse of discretion by changing the permanency goal of [Child] from reunification to adoption where the Department of Human Services of the City of Philadelphia failed to provide sufficient evidence that such a goal change would be best suited for [Child's] needs and welfare?

Mother's Brief at 3.

In her first issue, Mother argues that the trial court committed an error of law and an abuse of discretion by involuntarily terminating her parental rights under 23 Pa.C.S. § 2511(a)(5), and (8), and (b). Mother's Brief at 10-23. Mother contends that there was not clear and convincing evidence to support the trial court's determination. *Id*. at 10.[3]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

_____

[3] In addition, Mother alleges that the trial court committed multiple errors pertaining to the admission of evidence that adversely affected its decision. Mother's Brief at i-ii, 11-23. However, Mother waived any challenges to the evidentiary determinations of the trial court due to her failure to include such challenges in both her concise statement of errors complained of on appeal and the statement of questions involved in her brief on appeal. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal). For the same reason, we find waived the portion of Mother's first issue in her brief challenging the goal change, as her concise statement did not include a challenge to the goal change in the first issue of her Pa.R.A.P. 1925 statement. *Id*.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, ___ Pa. ___, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental

rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court's order analyzed sections 2511(a)(1), (2), (5), (8), and (b), which provide as follows:

> **§ 2511. Grounds for involuntary termination.**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > 1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > * * *
> >
> > (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a

reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  This Court may affirm the trial court's decision regarding the termination of parental rights with regard to **any one** subsection of section 2511(a).  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (emphasis added).

We observe that Mother has failed to challenge the trial court's determination to terminate her parental rights under 23 Pa.C.S. § 2511(a)(1) and (2) in both her concise statement of errors complained of on appeal and the statement of questions involved in her brief on appeal. Likewise, Mother has not presented any argument with regard to either

subsection 2511(a)(1) or (2) in the argument portion of her appellate brief. In failing to do so Mother has, in effect, conceded that sufficient grounds exist for termination under subsections 2511(a)(1) and 2511(a)(2). ***See Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal). ***See also In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). We caution Mother's counsel that failure to follow the Rules of Appellate Procedure can have dire consequences; however, given the somewhat confusing nature of Mother's argument and our concern for assuring that termination was proper under section 2511(a), we will not impose those consequences here. Accordingly, we will proceed to review the merits of the appeal as it pertains to the sufficiency of the evidence to support the termination of Mother's parental rights. In so doing, we choose to focus our review on whether there was sufficient evidence to support the termination of Mother's parental rights under subsection 2511(a)(2). ***In re B.L.W.***, 843 A.2d at 384.[4]

---

[4] Mother also contends that DHS failed to prove by clear and convincing
*(Footnote Continued Next Page)*

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

On the record at the close of the hearing on the termination petition, the trial court stated the following:

> It's clear that the parents did nothing to remedy the issues that brought the child into care and neither will be in a position to remedy those issues going forward.

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

evidence that involuntarily terminating her parental rights would best serve the need and welfare of Child, where there was inadequate evidence as to the parent-child bond and no pre-adoptive resource has been identified. Mother's Brief at 3, 10. To the extent that Mother's arguments relate to section 2511(a), we will analyze them under section 2511(a)(2). Moreover, to the extent that Mother's arguments relate to a needs and welfare and bond analysis, and do not relate to section 2511(a), we will consider them later in this memorandum in our analysis under section 2511(b).

Parents focus on their desire to have the child placed with family members, yet do not offer evidence as to what they've done to remedy the issues that brought the child into care. In fact, [M]other expressly admitted that she's not able to care for the child. The alternative is not to allow – if a parent says I can't care for the child but I want my family members to care for the child, that's not something the [c]ourt takes into consideration when it's determining whether or not these right [sic] should be terminated. The evidence is clear and convincing.

Regarding [M]other, the evidence is clear and convincing and satisfies the requirements under section 2511(a)[(1)], [(2)], [(5)], and [(8)] and 2511(b) that there would be no irreparable harm if the rights were terminated and the child would recover and . . . go on to lead a normal life with another family.

N.T., 3/3/16, at 53-54.

In its Pa.R.A.P. 1925(a) opinion, the trial court expressed the following:

This [c]ourt found by clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8).

The [r]ecord demonstrates Mother's ongoing inability to provide care or control for the [c]hild or perform any parental duties and also her failure to remedy the conditions that caused her child to come into care and thus had been and continues to be unable to provide and care for her child, warranting involuntary termination of her parental rights.

The documents and testimony provided this [c]ourt with clear and convincing evidence that termination of Mother's parental rights would be in the best interest of the [c]hild.

After hearing the credible testimony of the CUA workers, the [c]ourt found by clear and convincing evidence, that their observations and conclusions regarding Mother's non-compliance with the FSP objectives, and lack of ability to fulfill her parental responsibilities[,] were persuasive.

- 12 -

* * *

As discussed above, the [t]rial [c]ourt found that Mother evidenced an incapacity to parent this child. The [m]other's failure to complete objectives and failure to seek and maintain treatment for her drug dependency, affects her inability to function as a parent. The [trial court] was not persuaded that Mother could resolve her dependency issues in the near future. Although Mother testified that she loves her son dearly, she does not give herself the tools to provide a safe and drug-free environment for her [c]hild.

Trial Court Opinion, 6/8/16, at 14-16.

We conclude the trial court's determination with regard to section 2511(a)(2) is supported by the evidence in the record, and the trial court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of S.P.**, 47 A.3d at 826-827. Thus, we affirm the termination of Mother's parental rights pursuant to section 2511(a)(2). **See In re B.L.W.**, 843 A.2d at 384 (explaining that we need only agree with a trial court's decision as to any one subsection of 2511(a) in order to affirm the termination of parental rights).

Next, Mother challenges the sufficiency of the evidence to support the trial court's decree as to section 2511(b). Mother contends that there was insufficient evidence to support a finding that the termination of her parental rights best serves Child's needs and welfare, and that there was no relationship between the child and her that would cause Child to suffer irreparable harm if her rights were terminated. Mother's Brief at 9-10, 23-45. Mother claims that the trial court failed to make adequate findings to

support its determination that termination was in Child's best interest. *Id.* at 10. Additionally, Mother asserts that the trial court erred because DHS had not identified a pre-adoptive home for Child. *Id.* at 41-45.[5]

We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b) the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention"

_____

[5] With regard to Mother's assertion that the trial court erred in changing Child's permanency goal, we observe that a challenge to a goal change requires a comprehensive examination under 42 Pa.C.S. § 6351. However, Mother has failed to develop an argument for this claim with any substantive discussion of, or citation to, relevant case law or pertinent authority regarding goal change. Indeed, Mother never mentions 42 Pa.C.S. § 6351 in her appellate brief. Accordingly, we find any argument in this regard to be waived. *See Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) (quoting *Jones v. Jones*, 878 A.2d 86, 90 (Pa. Super. 2005) (stating that "it is well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal")). *See also In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . . Nor are we of the opinion that the biological connection between [the parent] and the [child] is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

In its Rule 1925(a) opinion, the trial court stated the following:

This [c]ourt finds credible the testimony from the agency workers that the [c]hild would not suffer irreparable harm if Mother's rights were terminated[,] and that termination of Mother's parental rights would be in the best interest of the [c]hild. The [c]ourt concluded:

It's clear the parents did nothing to remedy the issues that brought the [c]hild into care and neither will be in a position to remedy those issues going forward. Parents focus on their desire to have the [c]hild placed with family members, yet do not offer evidence as to what they've done to remedy the issues that brought the [c]hild into care. In fact, Mother expressly admitted that she's not able to care for the [c]hild. The alternative is not to allow – if a parent says I can't care for the [c]hild but I want my family members to care for the [c]hild, that's not something the [c]ourt takes into consideration when it's determining whether or not these rights should be terminated. The evidence is clear and convincing.

Regarding Mother, the evidence is clear and convincing and satisfies the requirements under [section] 2511(a)[(1)], [(2)], [(5)], and (8)] and [section] 2511(b) that there would be no irreparable harm if the rights were terminated and the child would recover and with God's help, go on to lead a normal life with another family. Her

- 16 -

> rights are terminated. I've listened closely to the evidence. There are no novel issues here. It's a weight issue and I've considered the weight of all the evidence. Mother's rights are terminated under [section] 2511 (a)[(1)], [(2)], [(5)], and [(8)] and [section 2511[(b)] since the [c]hild was in Mother's care when the [c]hild was removed and placed. (N.T. 3/3/16, pp. 53-54).

Trial Court Opinion, 6/8/16, at 16-17.

After a careful review of the record in this matter, it is our determination that the record supports the trial court's factual findings, and the trial court's conclusions are not the result of an error of law or an abuse of discretion with regard to section 2511(b). *In re Adoption of S.P.*, 47 A.3d at 826-827. Accordingly, it was proper for the trial court to find no bond such that Child would suffer permanent emotional harm if Mother's parental rights are terminated.

With regard to Mother's overarching constitutional arguments that her due process rights were violated, we observe: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the

hope that [a parent] will summon the ability to handle the responsibilities of parenting")). Hence, because the trial court's determination was supported by the record, we conclude that Mother's constitutional claims lack merit.

Therefore, we affirm the decree terminating Mother's parental rights with regard to Child under sections 2511(a)(2) and (b). In addition, we affirm the order changing Child's permanency goal to adoption.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016